997 A.2d 912

**Omar PARKER**

v.

**STATE of Maryland.**

**No. 2117, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

July 2, 2010.

470

472

Brian M. Saccenti (Elizabeth L. Julian, Acting Public Defender, on the brief) Baltimore, MD, for appellant.

Robert Taylor, Jr. (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: HOLLANDER, WOODWARD and MATRICCIANI, JJ.

HOLLANDER, J.

This case comes before us for the second time. Following a trial in 2007, a jury in the Circuit Court for Baltimore City convicted Omar Parker,[1] appellant, of second degree assault, in violation of Md.Code (2002, 2005 Supp.), § 3–203 of the Criminal Law Article ("C.L."), and retaliation for testimony, in violation of C.L. § 9–303.[2] The court initially sentenced appellant to five years' incarceration for second degree assault and, pursuant to C.L. § 9–303(c)(2), to a concurrent term of twenty years for "retaliation for testimony." The court dated both sentences from February 17, 2006, the date of appellant's arrest. This Court subsequently affirmed appellant's convictions but vacated his sentence for retaliation and remanded for a new sentencing for that offense. *See Parker v. State,* 185 Md.App. 399, 404, 970 A.2d 968 (2009) *("Parker I ")*.

On October 20, 2009, the circuit court imposed a term of five years' incarceration for retaliation, commencing on July 2, 2009, the date when the Maryland Division of Correction ("DOC") released appellant with respect to his assault conviction and transferred him to the Baltimore City Detention Center ("BCDC"). At the resentencing, the circuit court did not award appellant any credit for the time he had served from his arrest on February 17, 2006, until his transfer to BCDC on July 2, 2009.

Appellant's second appeal followed. He presents one question: "Did the circuit court err in failing to give Mr. Parker

---

1. At appellant's first sentencing, the prosecutor and defense counsel informed the court that appellant's actual name is Omar Anderson.

2. Appellant was acquitted of first degree assault; use of a handgun in the commission of a felony or crime of violence; and wearing, carrying, or transporting a handgun.

credit against his five year sentence for witness retaliation for the time he served between February 17, 2006, and July 1, 2009?"

For the reasons set forth below, we shall vacate and remand for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

This matter is rooted in an incident that occurred on November 29, 2005, when appellant threatened Kya Hicks with a gun. *See Parker I,* 185 Md.App. at 403–09, 970 A.2d 968. Appellant was convicted on June 4, 2007. At the initial sentencing proceeding on July 26, 2007, the court said:

Well Mr. Parker, also know [sic] as Mr. Anderson, there's no question that you're an intelligent man a well spoken man but you clearly have no insight into your behavior. You have no remorse. You've no desire to change.

You have a serious drug history and the basis of this case [sic] strikes at the very heart of the criminal justice system. Intimidation of witnesses undermines everything that the criminal justice system stands for.

So as far as this court's concerned, its [sic] this kind of case which is the most serious case that we face in our society today.

Accordingly, in *Parker I* the court imposed a sentence of five years' incarceration for second degree assault and a concurrent term of twenty years for retaliation. The court inquired as to "the start date," and defense counsel responded, "February 17, 2006." The court said: "I will date that sentence from ... February 17, 2006."

---

**3.** We need not provide a detailed recitation of the underlying facts, which are set forth in *Parker I,* 185 Md.App. at 404–09, 970 A.2d 968, because they are not pertinent to the issue on appeal. Instead, we shall include "only the portions of the trial evidence necessary to provide a context for our discussion...." *Washington v. State,* 180 Md.App. 458, 461–62 n. 2, 951 A.2d 885 (2008); *see Singfield v. State,* 172 Md.App. 168, 170, 913 A.2d 671 (2006), *cert. denied,* 398 Md. 316, 920 A.2d 1060 (2007); *Martin v. State,* 165 Md.App. 189, 193, 885 A.2d 339 (2005), *cert. denied,* 391 Md. 115, 892 A.2d 478 (2006).

Appellant lodged his first appeal on August 16, 2007. He argued, *inter alia*, that the circuit court erred in sentencing him to an enhanced term of twenty years for witness retaliation, because the jury was never asked to determine whether the retaliation related to a drug crime or a crime of violence, as required for an enhanced twenty-year sentence under C.L. § 9–303(c)(2).[4] *Parker I*, 185 Md.App. at 409–13, 970 A.2d 968. In an Opinion filed on May 7, 2009, the *Parker I* Court agreed. *Id.* at 415, 970 A.2d 968. Therefore, the Court vacated the sentence for retaliation and remanded for resentencing under C.L. § 9–303(c)(1).[5] *Id.* at 421, 970 A.2d 968.

As to the retaliation conviction, the trial court held a second sentencing hearing on October 20, 2009, at which the State asked the court "to impose a five-year sentence," which was the maximum allowed under the circumstances. The State was silent as to whether the sentence should be consecutive or concurrent. The following exchange is pertinent:

---

4. C.L. § 9–303 provides:
 **Retaliation for testimony.**
 (a) *Prohibited.*—A person may not intentionally harm another, threaten to harm another, or damage or destroy property with the intent of retaliating against a victim or witness for:
 (1) giving testimony in an official proceeding; or
 (2) reporting a crime or delinquent act.
 \* \* \*
 (c) *Penalty.*—(1) Except as provided in paragraph (2) of this subsection, a person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 5 years or a fine not exceeding $5,000 or both.
 (2) If the official proceeding or report described in subsection (a) of this section relates to a felonious violation of Title 5 of this article[, governing "Controlled Dangerous Substances, Prescriptions, and other Substances,"] or the commission of a crime of violence as defined in § 14–101 of this article, or a conspiracy or solicitation to commit such a crime, a person who violates this section is guilty of a felony and on conviction is subject to imprisonment not exceeding 20 years.
 (d) *Sentencing.*—A sentence imposed under this section may be separate from and consecutive to or concurrent with a sentence for any crime based on the act establishing the violation of this section.

5. The mandate was issued on June 8, 2009.

[APPELLANT'S COUNSEL]: Your Honor, given the opinion from the Court of Special Appeals and all the surrounding case law, given the fact that he's already given 20 years, I'm going to submit.

THE COURT: So you're not asking for less than five years?

[APPELLANT'S COUNSEL]: No.

Defense counsel indicated to the court that appellant "was released from the Division of Correction and sent to the jail on July the 2nd." [6] The following colloquy ensued:

THE COURT: All right. Well, given the fact that the court viewed this case as such a serious violation, since it was one of the first matters in which there was testimony that there was retaliation for testifying, and since the Court of Special Appeals indicated that—that because the jury was not instructed to find that the retaliation had occurred in connection with a felony, that the court could not enhance the penalty.

And the court had given Mr. Parker the 20 years as the enhanced penalty. Therefore, the court, in this case, . . . as per the instructions of the Court of Special Appeals with regard to the limits, this court feels that five years is the appropriate sentence. And I will give the defendant five years, and I'll date it from July 2nd, 2009 to give him credit for all time that he's served on this charge. . . .

[APPELLANT'S COUNSEL]: So, Your Honor, for clarification, so his sentence is going to be [sic] begin on the date that he was actually transferred from the Division of [C]orrections?

THE COURT: Yes. Yes.

\*　　\*　　\*

6. The court below accepted this assertion, although the record does not establish the precise date. Because the State does not dispute appellant's assertion, we shall assume the accuracy of the contention.

[APPELLANT'S COUNSEL]: ... My client is concerned that the credit would go back to, I believe, it's February of 2006.

THE COURT: I asked him when he was transferred to the Baltimore City Jail, and you just told me July 2nd. So that's the day it's [sic] going to get because he was serving a sentence on the assault in the second degree. Although if he was still at the Division of Correction, my sentence with regard to retaliation would be consecutive to that sentence.

Because he completed that sentence [for assault], then I'm willing to give him credit for all the time he's been held at the City Jail pending sentencing in this matter.

[APPELLANT'S COUNSEL]: Your Honor, I'm going to object then. Because under the case law he can't be given a consecutive anyway [sic]. He's been in, he served pretrial from—

THE COURT: I'm not giving him a consecutive sentence. I'm giving him five years and I'm dating it from July 2nd 2009.

This appeal followed.

## DISCUSSION

### I.

Appellant argues that the circuit court erred by failing to credit him for the time he served between his arrest on February 17, 2006, and his release to the BCDC on July 1, 2009, a total of 1,231 days.[7] According to appellant, he served that time for the initial sentences of five years for assault and a concurrent term of twenty years for retaliation. Therefore, appellant maintains that, pursuant to Md.Code (2001, 2007 Supp.), § 6–218 of the Criminal Procedure Article ("C.P."), he

---

7. By our calculation, appellant served 1,230 days. Apparently, appellant included July 2, 2009, in his calculation of the time he served that was not credited towards his retaliation charge. We did not include July 2, 2009 in our calculation, however, because the retaliation sentence began on that date.

is entitled to credit on the new retaliation sentence for all the time he previously spent in custody on that sentence.

The State insists that C.P. § 6–218(d) applies here. In its view, the court was not required to grant appellant credit for the time he served in connection with his first sentencing.

We pause to review the relevant statutory provisions. C.P. § 6–218, titled "Credit against sentence for time spent in custody," provides, in part: [8]

(b) *In general.*—(1) A defendant who is convicted and sentenced shall receive credit against and a reduction of the term of a definite or life sentence, or the minimum and maximum terms of an indeterminate sentence, for all time spent in the custody of a correctional facility, . . . or other unit because of:

(i) the charge for which the sentence is imposed; or

(ii) the conduct on which the charge is based.

(2) If a defendant is in custody because of a charge that results in a dismissal or acquittal, the time that would have been credited if a sentence had been imposed shall be credited against any sentence that is based on a charge for which a warrant or commitment was filed during that custody.

(3) In a case other than a case described in paragraph (2) of this subsection, the sentencing court may apply credit against a sentence for time spent in custody for another charge or crime.

(c) *Credit when prior sentence set aside.*—A defendant whose sentence is set aside because of a direct or collateral attack and who is reprosecuted or resentenced for the same crime or for another crime based on the same transaction shall receive credit against and a reduction of the term of a

---

8. As part of the Code revision process, C.P. § 6–218 was enacted, effective October 1, 2001, to replace former Md.Code (1957, 1996 Repl. Vol.), § 638C of Article 27, without substantive change. *See* Laws of Maryland 2001, ch. 10; *Wilson v. Simms*, 157 Md.App. 82, 94, 849 A.2d 88, *cert. denied*, 382 Md. 687, 856 A.2d 723 (2004).

definite or life sentence, or the minimum and maximum terms of an indeterminate sentence, for all time spent in custody under the prior sentence, including credit applied against the prior sentence in accordance with subsection (b) of this section.

(d) *Credit when one of multiple sentences set aside.*—A defendant who is serving multiple sentences, one of which is set aside as the result of a direct or collateral attack, shall receive credit against and a reduction of the remaining term of a definite or life sentence, or the remaining minimum and maximum terms of an indeterminate sentence, for all time spent in custody under the sentence set aside, including credit applied against the sentence set aside in accordance with subsection (b) of this section.

(e) *Credit awarded at sentencing.*—(1) The court shall award the credit required by this section at the time of sentencing.

(2) After having communicated with the parties, the court shall tell the defendant and shall state on the record the amount of the credit and the facts on which the credit is based.

In addition, Md.Code (2006 Repl. Vol., 2007 Supp.), § 12–702 of the Courts and Judicial Proceedings Article ("C.J.") is relevant. It provides, in part:

**Sentences following appeals.**

(a) *Remand for sentence; mandatory credit for time served.*—If an appellate court remands a criminal case to a lower court in order that the lower court may pronounce the proper judgment or sentence, the lower court shall deduct from the term of the new sentence the time served by the defendant under the previous sentence from the date of his conviction. If the previous sentence was a statutory maximum sentence, the lower court also shall give credit for any period of incarceration prior to the previous sentence, if the incarceration was related to the offense for which the sentence was imposed.

(b) *Remand for sentence or new trial; limitations on increases in sentences.*—If an appellate court remands a criminal case to a lower court in order that the lower court may pronounce the proper judgment or sentence, or conduct a new trial, and if there is a conviction following this new trial, the lower court may impose any sentence authorized by law to be imposed as punishment for the offense. However, it may not impose a sentence more severe than the sentence previously imposed for the offense unless:

(1) The reasons for the increased sentence affirmatively appear;

(2) The reasons are based upon additional objective information concerning identifiable conduct on the part of the defendant; and

(3) The factual data upon which the increased sentence is based appears as part of the record.

Appellant argues that C.P. § 6–218(c) "clearly applies" to this case, because his sentence was set aside as a result of a direct appeal, and he was then resentenced for the same offense, i.e., witness retaliation. Looking to the plain language of C.P. § 6–218, he asserts:

[S]ubsection (c) applies to someone "whose sentence is set aside because of a direct or collateral attack *and who is reprosecuted or resentenced for the same crime or for another crime based on the same transaction,*" while subsection (d) applies to a person "who is serving multiple sentences, one of which is set aside as the result of a direct or collateral attack." [C.P.] § 6–218(c) & (d) (emphasis added). Both subsections refer to a sentence that is "set aside." That the legislature used the italicized language in subsection (c) but not in subsection (d) strongly suggests that it did not intend (d) to apply to someone who was resentenced for the same crime or based on the same transaction. In other words, (c) applies when a conviction or sentence is vacated and the person is subsequently resentenced for the same crime or another based on the same transaction, whereas (d) applies when a sentence is

vacated but the defendant is not resentenced for that crime or another based on the same transaction.

Noting that, since February 17, 2006, he was in custody on both the assault and retaliation convictions, appellant insists that he was entitled to " 'receive credit against and a reduction of the term of' " the new five-year sentence " 'for all time spent in custody under the prior sentence.' " (Citing C.P. § 6–218(c)). He adds:

> The judge's refusal to start the new five year sentence for retaliation on February 17, 2006, or to give Mr. Parker credit against this sentence for the 1,231 days he spent in custody between February 17, 2006, and July 1, 2009, deprived Mr. Parker of credit to which he was entitled under § 6–218(c).

Appellant underscores that C.P. § 6–218(c) refers "to a resentencing for a particular crime," while § 6–218(d) begins with the phrase "[a] defendant who is serving multiple sentences." He posits:

> There is nothing in subsection (c) that expressly limits its applicability to cases in which the defendant was sentenced on only one count. Its plain language makes clear that it applies here. Moreover, it is difficult to conceive of any reason why the legislature would give a person resentenced for the same crime credit for time served only when there were no other sentences.

Even if subsection (d) applies, Parker maintains that "it would still require that Mr. Parker receive credit for the time he [initially] spent in custody on the witness retaliation charge." He asserts:

> [Subsection (d) ] commands, in pertinent part, that a defendant "shall receive credit against and a reduction of the remaining term of a definite ... sentence ... for all time spent in custody under the sentence set aside." § 6–218(d). The "remaining term" in this case is the five year term the lower court imposed on resentencing. Under subsection (d), the court was required to give him credit against that five

year term for the time spent in custody on the previous witness retaliation sentence.

Noting that the "judge expressly denied that she was giving Mr. Parker a consecutive sentence," appellant complains:

If she had [imposed a consecutive sentence], this would have been an unlawful increase in his sentence. *Compare State v. Sayre*, 314 Md. 559, 562 [552 A.2d 553] (1989) (holding that "[w]hen a sentence is changed from concurrent to consecutive, it is increased in length") *with* [C.J.] § 12–702(b) (providing, with exceptions not implicated here, that when an appellate court remands a case to a lower court for resentencing, the lower court "may not impose a sentence more severe than the sentence previously imposed for the offense"); *North Carolina v. Pearce*, 395 U.S. 711, 725–26 [89 S.Ct. 2072, 23 L.Ed.2d 656] (1969).

Even if the court was entitled to impose a consecutive sentence for retaliation, however, appellant maintains that he "already served time in custody on the retaliation charge [from February 17, 2006 until July 1, 2009,] and therefore would be entitled to credit for it under [C.P.] § 6–218(c) and [C.J.] § 12–702(a)."

Finally, appellant maintains that, "to the extent that the statutory language is ambiguous on this issue, the rule of lenity requires that the ambiguity be resolved in favor of the defendant and against the State."

The State counters that C.P. § 6–218(d) "specifically applies to instances where 'one of multiple sentences' is set aside." It posits: "Subsection (d) on its face applies to instances of multiple sentences. . . ." Noting that "Subsection (d) is silent as to credit for time served," and that it "does not mention resentencing at all," the State maintains that the "issue of credit for time served on other charges [is] discretionary under subsection (b)(3)."

As to C.P. § 6–218(c), the State asserts: "Subsection (c) mandates giving credit for time served on that single sentence if and when a sentence is reimposed *for that charge*, which is entirely consistent with the purpose of § 6–218." (Emphasis

in original.) In its view, if appellant were allowed to receive credit for the time he served on the original sentence, he would receive "double" credit, in contravention of the intention of the Legislature and the Court of Appeals. It posits: "The law is not meant to allow inmates to 'bank' time . . . or receive double credit for time served."

According to the State, "[b]y applying subsection (c) to cases where there were multiple sentences, judges would be forced to impose de facto concurrent sentences at resentencing. Parker's interpretation essentially mandates 'double time.'" The State adds:

Parker's attempt at forcing a subsection (d) case into subsection (c) . . . would contribute nothing toward [the legislative goal of] avoiding "dead time"; as the time he spent in jail on his assault conviction was not "dead." It would, however, essentially tie the hands of the judge at resentencing, which was never the purpose of the statute.

Further, the State maintains that there "is no Constitutional or statutory bar to imposing a new sentence [on appellant] which runs consecutive to his prior sentence." In its view, C.J. § 12–702(b) "expressly allows a court to impose any legal sentence after remand, while requiring 'objective information' and 'affirmative[ ] reasons' before allowing an increase in the sentence on remand." Therefore, it claims that the sentencing court was entitled to begin Parker's sentence for witness retaliation on July 2, 2009.

The State also argues:

[T]here is an overarching element of common sense involved in allowing the sentencing court to shape the sentence it feels is appropriate. Parker seeks, essentially, a windfall from an inadvertent error of the sentencing court in what was a case of first impression.[ ] [*Parker I*,] 185 Md.App. at 414 [970 A.2d 968]. This is precisely the sort of gamesmanship the Supreme Court [has] rejected. . . . It is painfully evident that had the sentencing court been aware, at the time Parker's initial sentence was passed, that it was limited to a five-year maximum on the charge of witness intimi-

dation, Parker's sentences would not have been made concurrent.

* * *

Section 6–218(d) of the Criminal Procedure Article leaves it to the trial court's discretion as to whether a defendant should be given credit for time served on a different charge. Section 12–702 of the Courts and Judicial Proceedings Article does not affect the imposition of a new sentence on a different charge, which is the case here.

In response, appellant posits:

If the lower court had originally sentenced Mr. Parker to five years for assault and a consecutive fifteen years for witness retaliation (instead of five years for assault and a concurrent twenty years for witness retaliation), he would not have been serving his sentence for witness retaliation while he was serving his sentence for assault, and therefore would not be entitled to credit for that time against his new sentence for witness retaliation.

But, appellant insists that when the court initially sentenced him to concurrent terms, the court "gave him double credit for the time he was serving." He argues: "Applying subsection (c) to cases with multiple sentences would not require judges to impose de facto concurrent sentences at resentencing; it would merely require that judges give defendants credit against the new sentence for the time they served on the prior sentence." Parker argues:

Assuming *arguendo* that the judge lawfully could and actually did make the witness retaliation sentence consecutive at the resentencing, § 6–218 would still require that the court give him credit against the consecutive sentence for the time he had already served on the previous sentence. Even if a court could change a sentence from concurrent to consecutive on remand, the State can point to no statute that would permit a court to deprive Mr. Parker of the credit to which he was entitled under § 6–218.

## II.

Appellant makes a somewhat veiled challenge to the imposition of a consecutive sentence on remand.[9] The State argues in its brief that the court lawfully imposed a consecutive sentence on remand. Therefore, we turn first to the question of whether, on remand, the court imposed a consecutive sentence and, if so, whether it was permitted to do so if the original sentence for retaliation was concurrent to the assault sentence.

■ "The term 'sentence' is defined as '[t]he judgment that a court formally pronounces after finding a criminal defendant guilty; the punishment imposed on a criminal wrongdoer.'" *Carter v. State,* 193 Md.App. 193, 209, 996 A.2d 948 (2010) (quoting BLACK'S LAW DICTIONARY 1485 (9th ed. 2009)). *See also Resper v. State,* 354 Md. 611, 620, 732 A.2d 863 (1999) (adopting the definition of "sentence" in Black's Law Dictionary (6th ed. 1990)); *Ridgeway v. State,* 140 Md.App. 49, 61, 779 A.2d 1031 (2001) ("A 'sentence' is defined as 'the fine, probation or incarceration imposed to punish, rehabilitate or deter a convicted criminal defendant.'") (citation omitted), *aff'd,* 369 Md. 165, 797 A.2d 1287 (2002). A court may "make a sentence concurrent with or consecutive to any other unsuspended actual sentence of confinement that then exists." *Wilson v. Simms,* 157 Md.App. 82, 97, 849 A.2d 88 (citing *State v. Parker,* 334 Md. 576, 592, 640 A.2d 1104 (1994)), *cert. denied,* 382 Md. 687, 856 A.2d 723 (2004).

■ Although the sentencing judge said she was "not giving [Parker] a consecutive sentence," we believe that the retaliation sentence was consecutive. First, the judge declared that the sentence began on July 2, 2009, a date *after* appellant had completed his sentence for assault. Moreover, the court stated: "[I]f he was still at the Division of Correction, my

---

9. Appellant contends that the State missed the point when it "devote[d] most of its brief to arguing that there is no constitutional or statutory bar to imposing a consecutive sentence on remand," because the resentencing court stated that it was not imposing a consecutive sentence.

sentence with regard to retaliation would be consecutive to that sentence."

It is well settled that " 'a sentencing judge is vested with virtually boundless discretion,' " so as "to best accomplish the objectives of sentencing—punishment, deterrence and rehabilitation." *Smith v. State,* 308 Md. 162, 166, 517 A.2d 1081 (1986) (citation omitted). *See Jones v. State,* 414 Md. 686, 693, 997 A.2d 131 (2010); *Jackson v. State,* 364 Md. 192, 199, 772 A.2d 273 (2001). Nevertheless,

> [t]here are ... some restrictions placed upon the judge presiding at the sentencing proceeding. A sentence cannot violate any constitutional requirements such as the prohibition against cruel and unusual punishment; the sentencing judge cannot be motivated by prejudice, ill-will or any other impermissible considerations; and the sentence itself cannot exceed any limitation set by statute.

*Smith,* 308 Md. at 169, 517 A.2d 1081; *see Jones,* 414 Md. at 693, 997 A.2d 131.

Under Maryland Rule 4–345(a), a trial court is empowered to "correct an illegal sentence at any time." *See Chaney v. State,* 397 Md. 460, 466, 918 A.2d 506 (2007) (an illegal sentence is "limited to those situations in which the illegality inheres in the sentence itself; *i.e.,* there either has been no conviction warranting any sentence for the particular offense or the sentence is not a permitted one for the conviction upon which it was imposed and, for either reason, is intrinsically and substantively unlawful"); *Parker I,* 185 Md.App. at 415, 970 A.2d 968; *Ingram v. State,* 179 Md.App. 485, 510, 947 A.2d 74 (2008). But, a court ordinarily "may not increase the sentence" after it is imposed. *State v. Sayre,* 314 Md. 559, 560, 552 A.2d 553 (1989).[10]

---

10. In *Sayre,* 314 Md. at 560–61, 552 A.2d 553, the trial court inadvertently stated that Sayre was to serve his five-year sentence "concurrently" with, rather than "consecutively" to, any sentences he was then serving. The court immediately noted its mistake, recalled the case, and then explained that the five-year sentence was consecutive to Sayre's prior eight-year sentence. *Id.* at 561, 552 A.2d 553. The Court

■ The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects against "multiple punishments for the same offense,[1]" and "is enforceable against the states through the Fourteenth Amendment." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In *Pearce*, the Supreme Court determined that "the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited'[ ] in imposing sentence upon a new conviction for the same offense." *Id.* at 718–19, 89 S.Ct. 2072. It explained that if a defendant is reconvicted after a new trial, the time already served "must be returned—by subtracting [the time served] from whatever new sentence is imposed." *Id.* at 719, 89 S.Ct. 2072. The Court said:

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.
>
> *In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear.* Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitu-

---

of Appeals affirmed this Court's decision reversing the sentence, because "a sentencing judge may not increase a sentence to accomplish his original objective." *Id.* at 561, 566, 552 A.2d 553. The consecutive sentence was vacated and the original concurrent sentence was reimposed. *Id.* at 561, 552 A.2d 553.

tional legitimacy of the increased sentence may be fully reviewed on appeal.

*Id.* at 725–26, 89 S.Ct. 2072 (footnote omitted) (emphasis added).

■ Of import here, a resentencing is regarded as a sentencing. *Jones,* 414 Md. at 694, 997 A.2d 131. Notably, at a resentencing, "the sentencing court must approach its task as if no sentence had ever been imposed." *Bartholomey v. State,* 267 Md. 175, 193, 297 A.2d 696 (1972). *Accord Jones,* 414 Md. at 694, 997 A.2d 131. Therefore, the "trial court is charged . . . with 'exercising its sentencing discretion' as if the sentencing was occurring for the first time." *Jones,* 414 Md. at 694, 997 A.2d 131 (citation omitted).

■ There is no absolute prohibition on an increased penalty at a resentencing or after a new trial. In *Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), the Supreme Court recognized that the presumption of vindictiveness in *Pearce* did not apply when a guilty plea was set aside, and the trial court imposed a more severe penalty after a full trial than it had previously imposed pursuant to the initial guilty plea. *See also Holbrook v. State,* 364 Md. 354, 369, 772 A.2d 1240 (2001); *Hagez v. State,* 131 Md.App. 402, 423, 749 A.2d 206, *cert. denied,* 359 Md. 669, 755 A.2d 1140 (2000).

In *Trimble v. State,* 90 Md.App. 705, 603 A.2d 899 (1992), the appellant was convicted, *inter alia,* of first degree murder, for which he was sentenced to death. *Id.* at 707, 603 A.2d 899. Trimble was also sentenced to concurrent and consecutive life sentences plus seventy years on his remaining counts. *Id.* The death sentence was vacated on appeal. *Id.* On remand, the trial court imposed a life sentence, consecutive to all previous sentences. *Id.* Trimble again appealed, arguing "that a death sentence is a concurrent sentence and that replacing it with a consecutive life sentence on remand is an illegal increase in the sentence." *Id.* This Court disagreed and affirmed Trimble's sentences.[11] *Id.*

---

11. The *Trimble* Court relied upon a former version of Md. Rule 4–345, discussed *infra.*

The *Trimble* Court "view[ed] each sentence, singly, not the totality of the sentences, when determining the legality of a sentence." *Id.* at 708, 603 A.2d 899. It said: "[A] life sentence with the possibility of parole, even if consecutive, is less severe a punishment than life without parole and is in no way the equivalent of death." *Id.* Moreover, the Court noted that "a judge has virtually boundless discretion in sentencing and may impose any sentence not in violation of constitutional requirements or statutory limits, or motivated by ill-will, prejudice, or other impermissible considerations." *Id.* at 709, 603 A.2d 899 (citing *Woods v. State,* 315 Md. 591, 604, 556 A.2d 236 (1989)). The Court explained, *Trimble,* 90 Md.App. at 709, 603 A.2d 899:

> "This judicial power includes the determination of whether a sentence will be consecutive or concurrent, with the same limitations." *Kaylor v. State,* 285 Md. 66, 70, 400 A.2d 419 (1979) (citations omitted). "[T]he power of the judge to impose consecutive sentences ensures that a person who commits separate and distinct violations of the law receives separate and distinct punishments." *Id.* Since appellant alleges a violation of a statutory limit only, and the sentence in this case was lawfully imposed within the statutory limits, we hold that the judge did not abuse his discretion in sentencing appellant to life imprisonment consecutive to the sentences previously imposed, for the heinous crime of first degree murder.

*McRoy v. State,* 54 Md.App. 516, 458 A.2d 1262, *cert. denied,* 297 Md. 109 (1983), is also informative. There, the defendant was convicted of first and second degree rape, as well as battery. *Id.* at 516, 458 A.2d 1262. The trial court merged the two lesser convictions into the conviction for first degree rape and sentenced the defendant to life imprisonment.[12] *Id.* at 517, 458 A.2d 1262. This Court subsequently vacated the first degree rape conviction based on insufficiency of the evidence, but upheld the second degree rape conviction. *Id.* Therefore, the Court remanded for resentencing on the

---

12. At the time, appellant was not serving any other sentences.

second degree rape conviction. *Id.* On remand, appellant was sentenced to twenty years, consecutive to three life sentences he had since received for unrelated convictions. *Id.* The trial court gave appellant credit for the 562 days he had already served for the first degree rape conviction. *Id.* at 518, 458 A.2d 1262.

McRoy appealed again, arguing that by changing his shorter sentence to a consecutive sentence, the court had improperly increased his sentence. *Id.* at 517, 458 A.2d 1262. We disagreed and affirmed. *Id.* This Court stated: "[A] life imprisonment sentence for the first degree rape conviction was lessened by the twenty-year sentence imposed for the second degree rape conviction." *Id.* at 518, 458 A.2d 1262. Quoting *State v. White,* 41 Md.App. 514, 515, 397 A.2d 299 (1979), we said, 54 Md.App. at 518, 458 A.2d 1262:

> "A judge must relate the sentence he imposes to the *status quo* at the moment of sentencing. He may deal with the present or the past as concrete reality. He may make his sentence concurrent with or consecutive to whatever other sentence then exists, either 1) actually being served or 2) in suspension but with ever-present potentiality for the lifting of that suspension."

In explaining the decision to affirm, the *McRoy* Court said, *id.* at 518–19, 458 A.2d 1262:

> Because the twenty-year sentence was an original sentence and not a resentencing,[1] it was within [the court's] discretion to impose the sentence consecutive to the two other sentences. As the life imprisonment sentence for the first degree rape conviction was no longer valid, the sentence for the second degree rape conviction stood last in the batting order behind the two other life sentences. *See State v. White, supra,* 41 Md.App. at 518 [397 A.2d 299]. . . . The twenty-year sentence was not a replacement for the original life sentence imposed for the first degree rape conviction. There was no error committed in the sentencing of appellant. Although the order in which appellant must serve his

sentences has been changed, he has not been prejudiced nor has his punishment been enhanced.

The State relies on *Ridgeway, supra,* 140 Md.App. 49, 779 A.2d 1031. Although *Ridgeway* is instructive, it is of limited use, because Ridgeway's appeal relied upon Maryland Rule 4–345.

In *Ridgeway,* the trial court erroneously imposed three consecutive ten-year sentences for three counts of first degree assault, yet the jury had only convicted the defendant of reckless endangerment. The clerk's office notified the trial court of the error and the court recalled the parties three hours after the sentencing. Pursuant to a former version of Maryland Rule 4–345,[13] the court then struck the three ten-

---

13. Maryland Rule 4–345 was substantially reordered and revised by an amendment that took effect on July 1, 2004. *Sayre,* 314 Md. 559, 552 A.2d 553, and *Ridgeway,* 369 Md. at 170, 797 A.2d 1287, were decided based on former versions of Md. Rule 4–345(b). Rule 4–345, as it existed when *Ridgeway* was written, provided, in part (emphasis added):

> (a) **Illegal sentence.** The court may correct an illegal sentence at any time.
> (b) **Modification *or reduction*—Time for.** The court has revisory power and control over a sentence upon a motion filed within 90 days after its imposition (1) in the District Court, if an appeal has not been perfected, and (2) in a circuit court, whether or not an appeal has been filed. Thereafter, the court has revisory power and control over the sentence in case of fraud, mistake, or irregularity, or as provided in section (e) of this Rule. The court may not increase a sentence after the sentence has been imposed, except that it may correct an evident mistake in the announcement of a sentence if the correction is made on the record before the defendant leaves the courtroom following the sentencing proceeding.

The former provision included "Modification or reduction." However, the analogous provision in Rule 4–345(e) is limited to "Modification Upon Motion."

Rule 4–345 was also revised in 1992, after *Sayre,* 314 Md. 559, 552 A.2d 553, was decided. *See Ridgeway,* 369 Md. at 172 n. 2, 797 A.2d 1287. In *Greco v. State,* 347 Md. 423, 432 n. 4, 701 A.2d 419 (1997), the Court explained: "Rule 4–345(b) was amended after the decision in that case to permit the trial judge to correct an evident mistake in the announcement of a sentence if the correction is made on the record before the defendant leaves the courtroom following the sentencing proceeding." (Internal quotations omitted).

year sentences and imposed three five-year consecutive sentences for each count of reckless endangerment.

On appeal to this Court, Ridgeway argued that his sentence was unlawful, because the court's action had the effect of increasing a sentence of zero on the reckless endangerment counts to a sentence of five years. 140 Md.App. 49, 779 A.2d 1031. We disagreed, *id.* at 60–61, 779 A.2d 1031:

> The record itself is clear: the trial judge erred in sentencing appellant for crimes he did not commit (or at least was acquitted of) while, at the same time, failing to sentence him for crimes he did commit. Moreover, his intention to impose a sentence in connection with each of the three children who had been endangered by the shotgun blasts is unambiguously set forth in the sentencing transcript. After separately naming each child and identifying the assault count associated with that child, the court imposed a separate sentence. In imposing sentence, the trial judge made it plain that appellant's conduct amounted to a criminal act against each of the three children, and he intended to impose a separate and consecutive sentence with respect to each child.

In rejecting Ridgeway's double jeopardy claim, we reasoned, *id.* at 64, 779 A.2d 1031:

> [T]he Supreme Court has cautioned against permitting those convicted of a crime from using the Double Jeopardy Clause to avoid sentencing or, in other words, turning sentencing into "a game in which a wrong move by the judge means immunity for the prisoner." *Bozza v. United States,* 330 U.S. 160, 166–67 [67 S.Ct. 645, 91 L.Ed. 818] (1947). In *Bozza,* the issue before the Court was whether the "fact that the petitioner has been twice before the judge for sentencing and in a federal place of detention during the five-hour interim" constituted double jeopardy. *Id.* at 166 [67 S.Ct. 645]. Holding that it did not, the Supreme Court reaffirmed its rejection of the " 'doctrine that a prisoner, whose guilt is established, by a regular verdict, is to escape punishment altogether, because the court committed an

error in passing sentence.' " *Id.* at 166 [67 S.Ct. 645] (quoting *In re Bonner*, 151 U.S. 242, 260 [14 S.Ct. 323, 38 L.Ed. 149] (1894)). We agree.

The Court of Appeals affirmed. *Ridgeway*, 369 Md. at 171, 797 A.2d 1287. In distinguishing former Md. Rule 4–345(b), regarding modification or reduction of sentences, from Rule 4–345(a), the Court stated, *id.*: "The sentences for the three first degree assault convictions were illegal and properly vacated pursuant to subsection (a) of [both the former and current] Rule 4–345." As the Court explained, the resentencing occurred to correct an illegal sentence because "the trial court erroneously sentenced the petitioner for crimes for which he was not convicted ..." *Id.* at 171, 173, 797 A.2d 1287.

The State also relies on *United States v. Moreno–Hernandez*, 48 F.3d 1112 (9th Cir.), *cert. denied*, 515 U.S. 1151, 115 S.Ct. 2598, 132 L.Ed.2d 844 (1995). Moreno–Hernandez was convicted in federal court of conspiracy to transport aliens (count 1), two counts of transporting aliens (counts 2 and 3), and being an alien found in the United States after a felony conviction and subsequent deportation under 8 U.S.C. § 1326(b)(1) (count 4). *Id.* at 1113. Each term of imprisonment was to be served concurrently, and to be followed by a three-year term of supervised release on each count, also concurrent. *Id.* at 1114. With regard to count 4, Moreno–Hernandez was initially sentenced to 125 months under 8 U.S.C. § 1326(b)(2). *Id.* The statute carried a maximum penalty of fifteen years if the predicate felony is an "aggravated" felony. On appeal, the United States Court of Appeals for the Ninth Circuit concluded that the government did not prove that the prior felony was an "aggravated felony." *Id.* at 1114 n. 1. Therefore, it remanded for resentencing under 8 U.S.C. § 1326(b)(1), which carried a maximum penalty of five years. *Id.* at 1114.

On remand, the court resentenced Moreno–Hernandez under 8 U.S.C. § 1326(b)(1). *Id.* But, based on the sentencing guidelines, the court "ordered his sentence on that count to be served consecutively to, rather than concurrently with, the 60–

month concurrent sentences imposed on counts 1–3." *Id.* Nevertheless, Moreno–Hernandez's overall sentence for all four counts was decreased from 125 months to 120 months. *Id.*

Again, Moreno–Hernandez appealed. He contended, *inter alia,* that the court improperly changed the concurrent sentence to a consecutive sentence. *Id.* at 1113. Rejecting that claim, the Ninth Circuit stated, 48 F.3d at 1116:

A resentencing mandate from an appellate court . . . does away with the entire initial sentence, and authorizes the district court to impose "any sentence which could lawfully have been imposed originally." *Kennedy v. United States,* 330 F.2d [26, 29 (9th Cir.1964) ] (quoting *United States v. Chiarella,* 214 F.2d 838, 842 [ (2d Cir.), *cert. denied,* 348 U.S. 902, 75 S.Ct. 226, 99 L.Ed. 708 (1954) ]). In the latter case, double jeopardy is not implicated. A defendant has no legitimate expectation of finality in a sentence which he places in issue by direct appeal, so long as he has not completed serving the valid portion of the sentence. *United States v. Andersson,* 813 F.2d 1450, 1461 (9th Cir.1987).

Because, in this case, the district court resentenced Moreno–Hernandez in accordance with our mandate, and not pursuant to [FED. R. CRIM. P. 35 ("Correcting or Reducing a Sentence") ], the court was free to reconsider the entire "sentencing package" and to restructure the sentences to run consecutively. *See United States v. Jenkins,* 884 F.2d 433, 441 (9th Cir.1989) (noting that on remand after vacation of sentence, the district court should have an opportunity to reconsider the entire "sentencing package", not only the unlawful portion)[, *cert. denied,* 493 U.S. 1005, 110 S.Ct. 568, 107 L.Ed.2d 562 (1989) ].

Further, the court said, *id.* at 1117:

The district court's resentencing order that the sentence on count 4 run consecutively to the concurrent sentences on counts 1–3 does not violate our remand. In that remand we did not limit the overall sentence the district court could impose, nor did we circumscribe the manner in which the

court could apply the Sentencing Guidelines. We simply directed the district court to limit its sentence on count 4 to the five-year maximum prescribed by section 1326(b)(1).

Moreno–Hernandez's argument that our previous remand precluded the district court from imposing a consecutive sentence completely ignores [United States Sentencing Guidelines ("USSG"), 18 U.S.C. Appx. § 5G1.2(d) ("Sentencing on Multiple Counts of Conviction")]. That section is specifically designed to provide for consecutive sentences whenever, as was the case here, the sentencing range determined from the defendant's combined offense level exceeds the maximum sentence permitted on the count of conviction that carries the highest statutory maximum. *See United States v. Joetzki*, 952 F.2d 1090, 1097 (9th Cir.1991). Because Moreno–Hernandez had previously been deported after conviction for an aggravated felony, he was subject, under USSG § 2L1.2(b)(2), to an enhanced sentencing range of 100–125 months on count 4. The maximum possible sentence for that count, however, and for each of the other counts on which Moreno–Hernandez was convicted, is only five years. The district court therefore acted within its authority in requiring Moreno–Hernandez to serve his sentence on count 4 consecutively to his sentences on counts 1–3. This resulted in an overall sentence of 120 months, which is within the 125–month upper limit of the guidelines range for count 4 when enhanced under USSG § 2L1.2(b)(2).

The cases discussed above lead us to agree with the State that, on remand, the court was entitled to impose any sentence it could have lawfully imposed under C.L. § 9–303(c)(1), including a consecutive sentence. As in *Moreno–Hernandez*, 48 F.3d at 1116, the trial "court was free to reconsider the entire 'sentencing package' and to restructure the sentences to run consecutively." A consecutive five-year sentence, in lieu of a twenty-year concurrent sentence, was not an illegal increase in sentence under the circumstances of this case.

Our resolution of this issue, however, leaves open the question of whether appellant was entitled to any credit against that consecutive five-year sentence.

## III.

We turn to the issue of whether the sentencing court erred by failing to credit appellant for the time he spent in custody before the resentencing. We consider two discrete periods: 1) the period from appellant's arrest to the initial sentencing, i.e., his pretrial detention; and 2) the period from the imposition of the original sentence to the time of resentencing. Stated otherwise, the question is whether a judge who initially imposed a concurrent sentence for an offense, with credit from the date of arrest, and changes it, on remand, to a consecutive sentence, must nonetheless award credit for the period of pretrial detention, awarded at the first sentencing, as well as the time served while the sentence was concurrent (i.e., before the remand). As we have seen, each side presented cogent arguments in support of its respective positions.

In considering the subject of awarding credits after remand, R.D. Hursh, *"Right to Credit for Time Served under Erroneous or Void Sentence or Invalid Judgment of Conviction Necessitating New Trial,"* 35 A.L.R.2d 1283 (1954), is informative. Hursh explained, 35 A.L.R.2d 1283, § 2 (footnotes omitted):

In cases dealing with resentencing necessitated by the invalidity of the original sentence, but not involving a new trial between the first and second sentence, the courts are not in agreement on the question whether time served under the first sentence is to be credited against time served under the second. In some jurisdictions, allowance of such credit is provided for by statute. In jurisdictions lacking such a statute, what appears to be the modern (and, it is submitted, the better) view is that such an allowance is proper. But in a substantial number of cases the contrary view has been approved; in some of these decisions the courts have limited their rulings to cases in which the

invalid judgment is void (reasoning that in such a situation there is, in law, no imprisonment), while in others it has been commented that such an allowance is a matter for the legislature and beyond the power of the judiciary.

Hursh also addressed "the question whether one who has served in prison under a sentence is entitled to have time so served credited where, because the original sentence was invalid, it is necessary that he be resentenced" without a new trial. 35 A.L.R.2d 1283, § 5. He argues that the "modern (and the better) view ... is that such an allowance is proper." 35 A.L.R.2d 1283, § 5. However, Hursh does not address the more confounding situation where a defendant is serving multiple concurrent sentences, only one of which is vacated, and whether credit must be granted for time served if, on remand, the vacated sentence is made consecutive.

■■■■■ To resolve this thorny question, which involves construing C.J. § 12–702(a), as well as C.P. § 6–218(c) and (d), the well settled principles of statutory interpretation guide our analysis. The interpretation of a statute is a judicial function. *Zimmer–Rubert v. Bd. of Educ.,* 179 Md.App. 589, 606, 947 A.2d 135 (2008), *aff'd,* 409 Md. 200, 973 A.2d 233 (2009); *see Salamon v. Progressive Classic Ins. Co.,* 379 Md. 301, 307, 841 A.2d 858 (2004); *Maryland–National Capital Park & Planning Comm'n v. Anderson,* 164 Md.App. 540, 568, 884 A.2d 157 (2005), *aff'd,* 395 Md. 172, 909 A.2d 694 (2006). Determining the meaning of a statute is a question of law, subject to *de novo* review. *See Moore v. State,* 388 Md. 446, 452, 879 A.2d 1111 (2005); *Collins v. State,* 383 Md. 684, 688, 861 A.2d 727 (2004).

■■■■■ " 'The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature.' " *Chow v. State,* 393 Md. 431, 443, 903 A.2d 388 (2006) (citation omitted); *see Dep't of Health & Mental Hygiene v. Kelly,* 397 Md. 399, 419–20, 918 A.2d 470 (2007); *Johnson v. Mayor of Baltimore City,* 387 Md. 1, 11, 874 A.2d 439 (2005); *see also Friedman v. Hannan,* 412 Md. 328, 337, 987 A.2d 60 (2010) (" 'In statutory interpretation, our primary goal is always to

discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision . . . .' ") (quoting *People's Ins. Counsel Div. v. Allstate Ins. Co.,* 408 Md. 336, 351, 969 A.2d 971 (2009)). We are guided in this endeavor by the statutory text. *Reier v. State Dep't of Assessments & Taxation,* 397 Md. 2, 26, 915 A.2d 970 (2007); *Deville v. State,* 383 Md. 217, 223, 858 A.2d 484 (2004).

In our effort to effectuate the Legislature's intent, we give the words of a statute their ordinary and usual meaning. *Lockshin v. Semsker,* 412 Md. 257, 274–75, 987 A.2d 18 (2010); *City of Baltimore Dev. Corp. v. Carmel Realty Assocs.,* 395 Md. 299, 318, 910 A.2d 406 (2006); *Ridge Heating, Air Conditioning and Plumbing, Inc. v. Brennen,* 366 Md. 336, 350, 783 A.2d 691 (2001). If the language is clear and unambiguous, we ordinarily "need not look beyond the statute's provisions and our analysis ends." *Barbre v. Pope,* 402 Md. 157, 173, 935 A.2d 699 (2007); *see Thomas v. State Ret. & Pension Sys.,* 184 Md.App. 240, 249, 964 A.2d 733, *cert. granted,* 409 Md. 44, 972 A.2d 859 (2009). In addition, "an interpretation should be given to the statutory provisions that does not lead to absurd consequences." *Anderson v. Council of Unit Owners of Gables on Tuckerman Condominium,* 404 Md. 560, 571–72, 948 A.2d 11 (2008).

Further, we construe the statute as a whole, so that all provisions are considered together and, to the extent possible, reconciled and harmonized. *Rosemann v. Salsbury, Clements, Bekman, Marder & Adkins, LLC,* 412 Md. 308, 315, 987 A.2d 48 (2010); *Navarro–Monzo v. Washington Adventist,* 380 Md. 195, 204, 844 A.2d 406 (2004); *see Gwin v. Motor Vehicle Admin.,* 385 Md. 440, 462, 869 A.2d 822 (" '[W]e do not read particular language in a statute in isolation or out of context [but construe it] in light of the Legislature's general purpose and in the context of the statute as a whole.' ") (Citation omitted), *cert. denied,* 546 U.S. 823, 126 S.Ct. 359, 163 L.Ed.2d 67 (2005). If " 'reasonably possible' " we read a statute " 'so that no word, phrase, clause or sentence is rendered surplusage or meaningless,' " *Del Marr v. Montgom-*

*ery County,* 169 Md.App. 187, 207, 900 A.2d 243 (2006) (citations omitted), *aff'd,* 397 Md. 308, 916 A.2d 1002 (2007), or "superfluous or redundant." *Gillespie v. State,* 370 Md. 219, 222, 804 A.2d 426 (2002); *see Collins, supra,* 383 Md. at 691, 861 A.2d 727; *Mayor & Council of Rockville v. Rylyns Enters., Inc.,* 372 Md. 514, 551, 814 A.2d 469 (2002).

In *Gilmer v. State,* 389 Md. 656, 668, 887 A.2d 549 (2005), the Court reiterated: " 'When there is more than one reasonable interpretation of the statute, the statute is ambiguous.' " (Citation omitted). *See Stoddard v. State,* 395 Md. 653, 662, 911 A.2d 1245 (2006) (a statute is ambiguous "when there exist two or more reasonable alternative interpretations of the statute") (internal quotations and citations omitted); *see also Price v. State,* 378 Md. 378, 387, 835 A.2d 1221 (2003). If the language of the statute is ambiguous, then the court "may employ all the resources and tools of statutory construction" to ascertain its meaning, "including legislative history, prior case law, and statutory purpose." *Reier,* 397 Md. at 27, 915 A.2d 970 (internal citations omitted); *see Kelly, supra,* 397 Md. at 419–20, 918 A.2d 470 (If a statute's language is ambiguous, "we will resolve any ambiguity in light of the legislative history, caselaw, and statutory purpose"); *Mayor & City Council of Baltimore v. Chase,* 360 Md. 121, 131, 756 A.2d 987 (2000) (noting that even when the language of a statute is plain, we may confirm our construction of it by reference to its legislative history). Moreover, when faced with an ambiguous statute, " 'courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of [the] enactment [under consideration].' " *Fraternal Order of Police v. Mehrling,* 343 Md. 155, 174, 680 A.2d 1052 (1996) (citation omitted). Therefore, if a statute is ambiguous, an appellate court may consider " 'the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense.' " *Briggs v. State,* 413 Md. 265, 275, 992 A.2d 433 (2010) (quoting *Chesapeake Charter, Inc. v. Anne Arundel*

*County Bd. of Educ.,* 358 Md. 129, 135, 747 A.2d 625 (2000)) (internal quotations and citation omitted).

 Ordinarily, " 'when two statutes appear to apply to the same situation, the Court will attempt to give effect to both statutes to the extent that they are reconcilable.' " *Dixon v. Department of Public Safety & Correctional Servs.,* 175 Md.App. 384, 421, 927 A.2d 445 (2007) (quoting *State v. Ghajari,* 346 Md. 101, 115, 695 A.2d 143 (1997)). But, "If 'two statutes, one general and one specific, are found to conflict, the specific statute will be regarded as an exception to the general statute.' " *Dixon,* 175 Md.App. at 421, 927 A.2d 445 (citation and internal quotations omitted). Therefore, "[t]o the extent of an irreconcilable conflict, 'the specific statute is controlling. . . .' " *Id.* (quoting *Ghajari,* 346 Md. at 116, 695 A.2d 143); *see also Anderson,* 395 Md. at 183, 194, 909 A.2d 694; *Mayor of Oakland v. Mayor of Mountain Lake Park,* 392 Md. 301, 316–17, 896 A.2d 1036 (2006).

 Of import here, " '[u]nder Maryland law, an ambiguity in penal statutes is to be construed against the State. . . . Similarly, if doubt exists as to the proper penalty, punishment must be construed to favor a milder penalty.' " *Haskins v. State,* 171 Md.App. 182, 193–94, 908 A.2d 750 (2006) (quoting *Wilson,* 157 Md.App. at 98, 849 A.2d 88). Moreover, "[t]he rule of lenity 'instructs that a court not interpret a . . . criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what [the Legislature] intended.' " *Nelson v. State,* 187 Md.App. 1, 13, 975 A.2d 298 (2009) (quoting *Melgar v. State,* 355 Md. 339, 347, 734 A.2d 712 (1999) (internal quotations omitted)); *see also Cantine v. State,* 160 Md.App. 391, 413, 864 A.2d 226 (2004), *cert. denied,* 386 Md. 181, 872 A.2d 46 (2005).

With these principles in mind, we turn to the statutes in issue. We first consider C.J. § 12–702.

 As noted, C.J. § 12–702(a) provides that, when an appellate court remands for entry of a proper sentence, "the

lower court *shall* deduct from the term of the new sentence the time served by the defendant under the previous sentence...." (Emphasis added.) The word "shall" is ordinarily construed as mandatory. *In re Najasha B.*, 409 Md. 20, 32–33, 972 A.2d 845 (2009) (" 'in the absence of a contrary contextual indication, the use of the word "shall" is presumed to have a mandatory meaning ... and thus denotes an imperative obligation inconsistent with the exercise of discretion' ") (citation omitted); *see also Walzer v. Osborne*, 395 Md. 563, 580, 911 A.2d 427 (2006).

C.J. § 12–702 was enacted in 1973, when the Maryland General Assembly adopted the Courts and Judicial Proceedings Article of the Maryland Code.[14] Laws of Maryland 1973, 1st Spec. Sess., ch. 2, § 1. The Revisor's Note to the entirety of C.J. § 12–702 stated, in part:

> *North Carolina v. Pearce*, 395 U.S. 711 [89 S.Ct. 2072, 23 L.Ed.2d 656] (1969) held that upon re-sentencing credit must be given for any portion of a sentence previously served. That rule is reflected in subsection (a), and is required by the Double Jeopardy Clause of the U.S. Constitution. *Pearce* also held that if there was a reversal, a new trial, and a re-conviction, the second sentence could not be more severe than the first, except under certain limited circumstances. That rule is reflected in subsection (b), and the circumstances permitting an increased sentence are taken almost verbatim from *Pearce*. This rule is required by the Due Process Clause of the 14th Amendment of the United States Constitution.

* * *

---

**14.** Maryland Code Ann. (1957), art. 5, § 17, is the predecessor to C.J. § 12–702. Article 5, § 17, titled "Remand For Sentence—Deduction Of Time Already Served," provided:

> If the Court of Appeals shall remand a criminal action to the lower court in order that such court may pronounce the proper judgment or sentence, the lower court in passing sentence shall deduct from the term of the sentence the time already served by the defendant under the previous sentence from the date of his conviction.

... [W]e have a constitutional limitation on increase of sentence if there is an ordinary appeal and either a remand for sentencing or a re-conviction after a new trial. And we have a statutory limitation on increase of sentence if there is a conviction after a de novo appeal. What § 12–702 proposes is the codification of the case law, and the retention of the existing statutory law, thus providing a uniform approach to the problem, and one readily accessible to and understandable by those involved in criminal sentencing.

Laws of Maryland 1973, ch. 2.

C.J. § 12–702(a) has not been altered or amended since 1973.[15] The Revisor's Note to C.J. § 12–702(a) explained that the first sentence of subsection (a) was derived from the predecessor statute, Md.Code art. 5, § 17, "with minor editorial changes, except that the provision [was] made applicable to resentencing following remand by any appellate court." Laws of Maryland 1973, ch. 2. According to the Revisor's Note, the second sentence of C.J. § 12–702(a) was new, and "state[d] the rule of *Wright v. State,* 11 Md.App. 673 [276 A.2d 411] (1971)," in which the Court said, *id.* at 675, 276 A.2d 411, that "the Maryland Legislature, in providing a statutory maximum sentence, intended such maximum sentence to be calculated by including time spent in jail prior to trial and sentencing." The Revisor's Note continued:

A related question is whether or not credit for pre-original sentence confinement must be given if the original sentence was less than the statutory maximum. In *State v. Ewell,* 234 Md. 56 [198 A.2d 275] (1964) the Court of Appeals answered that question in the negative. Thereafter, *North Carolina v. Pearce,* 395 U.S. 711 [89 S.Ct. 2072, 23 L.Ed.2d 656] (1969) and *Benton v. Maryland,* 395 U.S. 784 [89 S.Ct. 2056, 23 L.Ed.2d 707] (1969) were decided. *Benton* applied the Federal constitutional double jeopardy provisions to the

---

**15.** In contrast, subsections (b) and (c) have been revised. In 1983, 1984, and 1987, C.J. § 12–702(c) was repealed and reenacted with amendments. H.B. 257 (Md.1987); H.B. 1309 (Md.1984); H.B. 1118 (Md.1983). In 1988, C.J. § 12–702(b) was repealed and reenacted with amendments. H.B. 1139 (Md.1988).

states.... But the question now under consideration was not expressly decided, whatever inferences may be gathered from *Pearce* and *Benton.* It was expressly left open in *Wright.* Therefore, no statutory provision on this point is proposed....

Laws of Maryland 1973, ch. 2.

We are unaware of any cases that have construed C.J. § 12–702(a). When the Legislature enacted C.J. § 12–702(a) in 1973, however, it "intended to correct situations in which the first sentence was given while the judge was unaware of information that would have resulted in a greater sentence...." Senate Judicial Proceedings Committee, Floor Report, H.B. 1139 (Md.1988).

In 1988, the Legislature amended C.J. § 12–702(b) when it passed H.B. 1139. The Bill Analysis explained that the 1988 bill "repeal[ed] the requirement that the increased sentence be based on conduct that occurred after the original sentence was imposed." H.B. 1139 (Md.1988), Bill Analysis—Judicial Proceedings. The Floor Report provided:

Under current law, the reasons for the increased sentence must be objective and the conduct must have occurred after the original sentence.

Testimony indicated that this bill is intended to correct situations in which the first sentence was given while the judge was unaware of information that would have resulted in a greater sentence had the judge been aware of the information. The example was given of a defendant giving false information that the defendant was a first offender while in reality the defendant had prior convictions in another jurisdiction.

Senate Judicial Proceedings Committee, Floor Report, H.B. 1139 (Md.1988).

In the cases that have discussed C.J. § 12–702(b), the defendant received an enhanced sentence after a *new* trial. *See, e.g., Dixon v. State,* 364 Md. 209, 228, 772 A.2d 283 (2001); *Hook v. State,* 315 Md. 25, 553 A.2d 233 (1989); *Davis v. State,* 312 Md. 172, 539 A.2d 218 (1988). Maryland's appellate courts

have recognized that C.J. § 12–702(b) was the Legislature's "response to the due process holding of *North Carolina v. Pearce* . . ." *Dixon,* 364 Md. at 225–26, 772 A.2d 283 (citation omitted); *see also Coley v. State,* 76 Md.App. 731, 735, 548 A.2d 161 (1988) (recognizing that C.J. § 12–702(b) codifies *Pearce* and "expands the *Pearce* doctrine to prohibit a retaliatory increase in sentence where the conviction is upheld on appeal but the sentence is vacated"); *Nimon v. State,* 71 Md.App. 559, 526 A.2d 645 (1987); *Hill v. State,* 64 Md.App. 194, 201, 494 A.2d 757, *cert. denied,* 304 Md. 298, 498 A.2d 1185 (1985).

▮ As the Court said in *Dixon,* 364 Md. at 226–27, 772 A.2d 283, C.J. § 12–702(b) "is a statement of legislative policy that stands independent of current Supreme Court notions of what due process may require." Moreover, the *Dixon* Court noted that the Supreme Court's subsequent modification of *Pearce*

> "does not change what the statute says, any more than would the statute be repealed were the Supreme Court to overrule *Pearce in toto.* Even if the Supreme Court now believes that due process does not now forbid what it seemed to prohibit in *Pearce* . . . that has no bearing on the General Assembly's statutory policy and the intent embodied in it."

*Id.* at 227, 772 A.2d 283 (quoting *Jones v. State,* 307 Md. 449, 454–55, 514 A.2d 1219 (1986)).

Similarly, in *Davis,* 312 Md. at 179, 539 A.2d 218, the Court said as to C.J. § 12–702(b): "It is a policy determination that, after a defendant successfully challenges a criminal conviction, he may not at a resentencing for the same offense receive a greater sentence than the sentence previously imposed, unless specified statutory conditions are met."

The legislative intent behind C.J. § 12–702, although mostly discussed in the context of subsection (b), suggests "that upon re-sentencing credit must be given for any portion of a sentence previously served." Laws of Maryland 1973, ch. 2. We are satisfied that C.J. § 12–702(b) does not apply to the

case *sub judice,* because there was no "conviction following [a] new trial" and appellant's sentence was reduced, not increased. However, Subsection (a) does appear to apply. It mandates that the "court shall deduct from the term of the new sentence the time served by the defendant under the previous sentence *from the date of his conviction."* (Emphasis added.)

Because the court originally imposed a concurrent sentence for retaliation, this means that appellant was serving that sentence while his first appeal was pending. Thus, pursuant to C.J. § 12–702(a), it would appear that, at the very least, appellant is entitled to credit for the time he served from his conviction on June 4, 2007, to July 1, 2009.[16]

We turn to the second statute, C.P. § 6–218. Both C.P. § 6–218(c) and (d) are interrelated. Each addresses the situation in which a defendant's sentence is "set aside" because of "a direct or collateral attack," and each provides that the defendant "shall receive credit against and a reduction . . . for all time spent in custody." There are key distinctions between the two subsections, however. Subsection (c) refers to a single sentence that is set aside, and expressly addresses reprosecution or resentencing. Here, there was more than one sentence, of which only one was vacated. But, there was a resentencing. Subsection (d) refers to "multiple sentences," of which only one is set aside. But, it does not mention reprosecution or resentencing.

As part of the code revision process, C.P. § 6–218 was enacted, effective October 1, 2001, to replace, "without substantive change," former Md.Code (1957, 1976 Repl. Vol.), Article 27, § 638C.[17] Revisor's Notes to C.P. § 6–218, Laws of

---

16. The period of pretrial detention is discussed, *infra.*

17. Article 27, § 638C(a), which was enacted in 1974, provided:

 (a) *Credit for time spent in custody before conviction or acquittal.—* Any person who is convicted and sentenced shall receive credit against the term of a definite or life sentence or credit against the minimum and maximum terms of an indeterminate sentence for all time spent in the custody of any state, county or city jail, correctional

Maryland 2001, ch. 10; *Gilmer, supra,* 389 Md. at 666, 887 A.2d 549 ("In 2001, Section 638C(a) was recodified as Sections 6–218(a) and (b) . . ."). Notably, Article 27, § 638C(b), titled *"Credit for time spent in custody under sentence which is set aside—Credit against subsequent sentence,"* and § 638C(c), titled *"Same—Person serving multiple sentences,"* are substantively the same as C.P. § 6–218(c) and (d), respectively.

Article 27, § 638C(a) was enacted to avoid " 'banked time,' a 'reserve of time established when a defendant spends time in custody that is not yet but may be credited against a valid sentence,' " and " 'dead' time, 'time spent in custody that will not be credited to any valid sentence.' " *Gilmer,* 389 Md. at 666, 887 A.2d 549 (quoting *Fleeger v. State,* 301 Md. 155, 163, 165, 482 A.2d 490 (1984)); *see Dedo v. State,* 343 Md. 2, 9, 680 A.2d 464 (1996); *Blankenship v. State,* 135 Md.App. 615, 617, 763 A.2d 741 (2000). The preamble to H.B. 650 (Md.1974), which enacted Article 27, § 638C, established that its "purpose [was] of providing that under certain circumstances persons shall receive credit against their sentences for any time spent in custody." Laws of Maryland 1974, ch. 735; *see Gilmer,* 389 Md. at 665, 887 A.2d 549.

In *Fleeger,* 301 Md. at 158, 482 A.2d 490, the defendant was in jail awaiting trial on a charge of theft when he escaped from jail and took an automobile that was left unattended with its

---

institution, hospital, mental hospital or other agency as a result of the charge for which sentence is imposed or as a result of the conduct on which the charge is based, and the term of a definite or life sentence or the minimum and maximum terms of an indeterminate sentence shall be diminished thereby. In any case where a person has been in custody due to a charge that culminated in a dismissal or acquittal, the amount of time that would have been credited against a sentence for the charge, had one been imposed, shall be credited against any sentence that is based upon a charge for which a warrant or commitment was lodged during the pendency of such custody. In all other cases, the sentencing court shall have the discretion to apply credit against a sentence for time spent in custody for another charge or offense. This section does not apply to a parolee who is returned to the custody of the Division of Correction as a result of a subsequent offense and is incarcerated prior to the date on which he is sentenced for the subsequent offense.

motor running. He was apprehended the next day. *Id.* Pursuant to a plea agreement, the State nol prossed the original charge of theft and Fleeger pled guilty to escape and unauthorized use of a motor vehicle. *Id.* Fleeger received concurrent sentences of six years' imprisonment for escape and three years' imprisonment for unauthorized use. *Id.* at 159, 482 A.2d 490. The sentencing court gave Fleeger credit against the sentence for the time he spent in custody after his escape, but not for the period of pre-escape custody. *Id.*

In the Court of Appeals, Fleeger argued that he was entitled to have his pre-escape incarceration credited against his sentence for escape. *Id.* at 159, 482 A.2d 490. The Court determined that the nolle prosequi of the original charge was "effectively tantamount to a dismissal" under Article 27, § 638C(a). *Id.* at 161, 162, 482 A.2d 490. Moreover, the Court stated: "That Fleeger received credit for his pre-escape custody against an offense committed after his original custody is not determinative of whether Fleeger is banking time. Instead, the determinative factor is whether Fleeger satisfies the precise conditions of the mandatory credit provision [in § 638C(a) ]." *Id.* at 164–65, 482 A.2d 490.

Concluding "that Fleeger [was] entitled to have his pre-escape custody credited against his sentence for the crime of escape," *id.* at 168, 482 A.2d 490, the Court reasoned, *id.* at 163–64, 482 A.2d 490:

> Credit statutes are designed to avoid the obviously undesirable effect of permitting a defendant to "bank" time before he commits a new offense. *See Standards Relating to Sentencing Alternatives and Procedures* 196 (American Bar Association Project on Minimum Standards for Criminal Justice 1968) . . .; *see also Bauers v. Yeager*, 261 F.Supp. 420, 424 (D.N.J.1966) (discussing "banked" time). Indeed, the possibility that an accumulated reserve of time could be used to offset a sentence for a future, yet uncompleted crime would destroy the deterrent value against the commission of such a crime. Maryland's credit statute, however, minimizes the banked time problem by restricting credit to those cases where a warrant or commitment is lodged

against a defendant while in custody on another charge, and the original charge culminates in a dismissal or acquittal. . . .

*Gilmer,* 389 Md. at 659, 887 A.2d 549, is also informative. Gilmer was in pretrial detention on a charge of attempted murder. On the defendant's 426th day in detention, he stabbed an inmate. *Id.* at 659–60, 887 A.2d 549. The stabbing led to charges of attempted first degree murder, first degree assault, openly wearing and carrying a dangerous and deadly weapon, reckless endangerment, second degree assault, and attempted second degree murder. *Id.* at 660–61, 887 A.2d 549. A jury convicted Gilmer of first and second degree assault and, prior to sentencing, the State nolle prossed the original charge of attempted murder. *Id.* at 661–62, 887 A.2d 549. At sentencing, the judge merged second degree assault with first degree assault and sentenced Gilmer to fifteen years' incarceration. *Id.* at 661, 887 A.2d 549. But, the court did not credit him with the 426 days he had already served on the initial attempted murder charge that was later nolle prossed. *Id.* at 662, 887 A.2d 549.

The Court of Appeals agreed with Gilmer that the use of the term "dismissal" in C.P. § 6–218(b)(2) was ambiguous, because it "reasonably can be interpreted in either of two ways: one in which the unrelated offense may not be re-prosecuted, or the other in which the unrelated offense subsequently may be prosecuted." *Id.* at 668–69, 887 A.2d 549.[18] After reviewing the history of nolle prosequi, it determined that "dismissal," as used in that provision, included disposition by nolle prosequi. *Id.* at 675, 887 A.2d 549. Therefore, the Court held that the circuit court erred in denying Gilmer credit for the time he

---

**18.** The dissent maintained that the language of C.P. § 6–218(b) "is clear . . . that trial judges are obliged to grant credit against time served where the relevant charge was disposed of by literal dismissal or acquittal only. In all other cases . . ., discretion was granted to judges whether to grant such credit." *Gilmer,* 389 Md. at 679, 887 A.2d 549. Thus, the dissent concluded that a nolle prosequi did not constitute a "dismissal" under the plain language of C.P. § 6–218(b)(2), and would fall under C.P. § 6–218(b)(3). *Id.* at 680–81, 887 A.2d 549.

served for the nolle prossed charge. *Id.* at 677, 887 A.2d 549. It explained, *id.* at 676–77, 887 A.2d 549:

> The State . . . asserts that if a nolle prosequi is included in the purview of dismissal for purposes of Section 6–218(b)(2), Gilmer could be awarded a potential windfall of double credit for time served on the nolle prossed charges were he prosecuted and convicted on them and again credited for the time served. Double credit, however, is not in issue because receiving credit for time served for the attempted murder can only occur once under the statute. More importantly, denying a defendant credit for time served on nolle prossed charges is not consistent with the legislative purpose for enacting Section 6–218, to ensure that "a defendant receive as much credit as possible for time spent in custody." *Fleeger,* 301 Md. at 165 [482 A.2d 490]. . . . The risk of double credit can be easily avoided administratively, whereas the elimination of "dead time" is an essential attribute of Section 6–218(b)(2). The State's argument about double credit is not persuasive.[ ]

*Wilson,* 157 Md.App. 82, 849 A.2d 88, a habeas corpus case, also provides guidance. There, the Circuit Court for Carroll County sentenced Wilson, consecutive to sentences imposed by the Circuit Court for Talbot County.[19] *Id.* at 85, 93, 849 A.2d 88. The sentences from Talbot County were subsequently reversed.

Wilson subsequently sought a 526 day credit, pursuant to Article 27 § 638C, for the time he served under the Talbot County sentences. *Id.* at 85 n. 1, 89–90, 849 A.2d 88. He claimed that his Carroll County sentences began to run immediately, i.e., before his actual sentencing. In support of his position, Wilson pointed to the statutory language, now set forth in C.P. § 6–218(d), "requiring credit for all time spent in

---

**19.** The Talbot County sentences had been imposed consecutive to Wilson's sentences in Delaware, for which he was paroled to the " 'Maryland detainer only' " on January 23, 1990. *Wilson,* 157 Md. App. at 87, 98, 849 A.2d 88. However, Wilson's whereabouts "were unknown" until he arrived in the custody of the Maryland DOC on May 2, 1990. *Id.* at 87, 849 A.2d 88.

custody under the sentence set aside, 'including credit applied against the sentence set aside.'" *Id.* at 95–96, 849 A.2d 88. On appeal, Wilson argued that the circuit court erred in its application of C.P. § 6–218(d) when read in connection with C.P. § 6–218(b)(2). *Id.* at 95–96, 849 A.2d 88.

The Court found that C.P. § 6–218 was ambiguous "and should thus be construed in appellant's favor." *Id.* at 99, 849 A.2d 88. It said, *id.* at 96, 849 A.2d 88: "The Court of Appeals has noted that one purpose of the statute is to minimize the possibility that 'an accumulated reserve of time could be used to offset a sentence for a future, yet uncompleted crime.'" (Quoting *Fleeger,* 301 Md. at 163, 482 A.2d 490). But, the Court also said: "Another purpose is to eliminate time spent in custody that will not be credited to any valid sentence." *Wilson,* 157 Md.App. at 96, 849 A.2d 88 (citing *Fleeger,* 301 Md. at 163, 482 A.2d 490).

In construing C.P. § 6–218 against the State, the Court determined that Wilson should be credited for the 526 days that he had served on the Talbot County sentences. *Wilson,* 157 Md.App. at 99–100, 849 A.2d 88. Thus, while the Court affirmed the denial of Wilson's petition for habeas corpus, it also computed a term of confinement that credited Wilson with an additional 526 days. *Id.* at 99–100, 849 A.2d 88.

The *Wilson* Court noted that C.P. § 6–218(c) and (d) "operate like (b)(2), although (c) and (d) apply to sentences set aside, and (b)(2) applies to dismissals and acquittals." *Id.* at 96, 849 A.2d 88 (citation omitted). Further, the Court explained, *id.*: "Subsection (c) addresses the situation where a defendant's sentence is set aside on direct or collateral attack, and the defendant is reprosecuted and resentenced for the same crime or another crime based on the same transaction." In contrast, C.P. § 6–218(d) "addresses the situation where a defendant is serving multiple sentences and one of them is set aside as a result of a direct or collateral attack." *Id.*

In *Lawson v. State,* 187 Md.App. 101, 975 A.2d 357 (2009), we construed C.P. § 6–218(b). As part of a plea agreement, Lawson pled guilty to possessing a cell phone in his prison

cell. *Id.* at 102, 975 A.2d 357. Pursuant to the plea agreement, the defendant received a one-year sentence "to run consecutive to the completion of any outstanding Maryland sentence not yet fully served." *Id.* After sentencing, the trial court granted the State's motion to correct the commitment record, because it included credit for time the defendant served awaiting trial on the cell phone charge, even though defendant was in prison during that time as the result of prior convictions. *Id.* The defendant filed a motion to correct an illegal sentence, arguing that the removal of the credited time rendered the sentence illegal. *Id.* The court denied that motion. *Id.* On appeal, the defendant asserted that the court erred "in changing his commitment record after sentencing to eliminate the credit for time served." *Id.*

The *Lawson* Court determined that C.P. § 6–218(b)(1) "is not ambiguous, and so the rule of lenity does not apply." *Lawson,* 187 Md.App. at 107, 975 A.2d 357 (citing *Tribbitt v. State,* 403 Md. 638, 646, 943 A.2d 1260 (2008) and *Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204 (1994)). We stated that C.P. § 6–218(b)(1)'s "plain meaning is that, upon conviction, a defendant must be credited for time he has served in custody 'because of' that crime (or the conduct underlying that crime)." *Id.* at 107, 975 A.2d 357. The Court explained, *id.*:

> Here, prior to his cell phone charge conviction, the appellant was serving time in custody for his 2002 convictions, not for the cell phone charge (or for possessing a cell phone in prison). If the appellant never had been charged with illegal possession of the cell phone, he nevertheless would have spent that entire seven months and 12 days in prison because of his 2002 convictions. (In fact, if he never had possessed the cell phone, he still would have spent that time in prison.) *Cf. Blankenship v. State,* [*supra,* 135 Md.App. at 620, 763 A.2d 741] (holding that, when a defendant is held to answer for numerous charges, he is not entitled to have his jail time credit multiplied by being given credit on each sentence for the full time he spends in jail awaiting disposition on multiple charges of cases). Under the plain meaning of CP section 6–218(b)(1), the appellant was not entitled

to be credited for time served, because there was no time served.

The Court also rejected Lawson's alternative argument that,

even if he was not entitled to credit for time served under CP section 6–218(b)(1), the inclusion of the credit on his original commitment record shows that the sentencing judge exercised his discretion to grant him credit for time served, under CP section 6–218(b)(3); and, having exercised his discretion to grant the credit, or even if the commitment record was in error, the sentencing judge could not correct the sentence, after the appellant left the sentencing hearing, so as to increase the time the appellant would serve.

*Id.* at 107–08, 975 A.2d 357.

We concluded that the record was clear that credit for time served was not part of the plea agreement, nor part of the sentence. *Id.* at 108, 975 A.2d 357. Citing C.P. § 6–218(e)(2), the Court explained: "There was no mention at the hearing of any credit for time served; and, if the court were granting such a credit, it would have been required to tell the appellant and state on the record 'the amount of the credit and the facts on which the credit is based.'" *Id.* Thus, the Court affirmed, noting that "correcting the commitment record to remove the credit was not a modification of the sentence, and Rule 4–345 did not apply." *Id.* at 110, 975 A.2d 357.

We must also consider *Blankenship,* 135 Md.App. 615, 763 A.2d 741. Blankenship was charged with seven robberies and two attempted robberies. *Id.* at 616, 763 A.2d 741. For each of the nine offenses, he was sentenced to consecutive five year sentences, with all but two years of each sentence suspended. *Id.* Blankenship had spent 238 days in custody before the imposition of his sentences, and he received 238 days of credit towards one of his three sentences. *Id.* Blankenship filed a Motion to Correct an Illegal Sentence, alleging that, "pursuant to Md. Ann.Code, art. 27, § 638C(a) (1999), the 238 days credit should have been subtracted from *each* offense for which he was convicted and sentenced and not just from one of them."

*Id.* (Emphasis in original). After Blankenship's motion was denied, he appealed, arguing that the court "erred in failing to give him credit for time spent in custody before the imposition of sentence for *each* of the offenses ..." *Id.* (Emphasis in original).

After examining the legislative intent underlying Article 27, § 638C(a), the Court concluded, *id.* at 618–19, 763 A.2d 741 (emphasis added):

> If two defendants receive identical sentences for similar crimes, it is the self-evident purpose of Sect. 638C(a) that the indigent prisoner who could not make bail not serve more time (pre-sentence incarceration plus post-sentence incarceration) than the more affluent prisoner who did make bail (post-sentence incarceration only). It is, moreover, clear that the Legislature contemplated a practical one-day-for-one-day method of reckoning. If a defendant has suffered 85 days of pre-sentence incarceration, for instance, he will serve 85 fewer days of actual incarceration pursuant to his sentence or aggregate sentences of incarceration.

> *The State will not be permitted to deny a defendant his credit for time served by applying it to one concurrent sentence but not to another.* It is more than a "paper" credit. If the prisoner had been in jail for 85 days prior to being sentenced, he would be entitled to walk out of jail 85 days sooner, even on multiple concurrent sentences. *Nash v. State,* 69 Md.App. 681, 691–93 [519 A.2d 769, *cert. denied,* 309 Md. 326, 523 A.2d 1013] (1987). By the same token, the defendant is not entitled to double or triple or quadruple credit for time served in the case of consecutive sentences. The defendant is entitled to a single credit against the aggregate sentence, not to multiple credits against each and every constituent segment of that aggregate. The elemental equation is one actual day for one actual day, and the paper shuffling of multiple sentences will neither decrease it nor increase it.

In the Court's view, Blankenship usurped the phrase "as much credit as possible" from *Fleeger,* 301 Md. at 165, 482

A.2d 490, and used it out of context. *Blankenship*, 135 Md.App. at 619, 763 A.2d 741. The Court explained, *id.:*

> On the facts of *Fleeger*, the problem was that of giving Fleeger "as much credit as possible" up to and hopefully including 100% credit for his pre-sentence incarceration actually served. What was before the Court in *Fleeger* did not in any way involve a claim of entitlement to 200% credit or 900% credit for the pre-sentence incarceration and the Court of Appeals was not even giving thought to such a non-existent issue. The use of the phrase "as much credit as possible" by the Court of Appeals simply will not, therefore, carry the semantic weight urged by the appellant. The appellant here, of course, received 100% credit for the 238 days he served of pre-sentence incarceration. That is as much credit as the "as much credit as possible" language of *Fleeger* ever contemplated.

Although the issue is one of first impression in Maryland, our resolution of it is in line with the undeviating resolution of the same issue by our sister states under virtually identical "credit for time served" statutes.

The Court affirmed, holding that the trial court "was correct in awarding the appellant 238 days credit for pre-sentence incarceration on one of the nine consecutive sentences and in not awarding what would have been excessive duplicate credit on the other eight." *Id.* at 623, 763 A.2d 741. Nevertheless, based on the language quoted above, *id.* at 618–19, 763 A.2d 741, the Court indicated that the outcome would have differed if Blankenship's sentences had been imposed concurrently.

*Nash*, 69 Md.App. 681, 519 A.2d 769, is the only Maryland case that we have found that has directly addressed the issue of awarding credit for presentence confinement on multiple concurrent sentences arising from the same incident. Nash was convicted of two counts of child abuse and two counts of third degree sexual offense. *Id.* at 683–84, 519 A.2d 769. One count of each offense involved a youngster named Paula, and one count of each offense involved her older sister, Michelle. *Id.* at 684, 519 A.2d 769. The charges were severed for trial.

*Id.* at 684 n. 1, 519 A.2d 769. In regard to the charges involving Paula, Nash received a nine year sentence. *Id.* The convictions involving Paula were subsequently affirmed on appeal. *Id.* In regard to the charges involving Michelle, Nash was sentenced to seven years' imprisonment for child abuse and a consecutive sentence of two years' imprisonment for third degree sexual offense. *Id.* at 684, 519 A.2d 769. At sentencing, the court stated: " 'I'm going to sentence you to the Division of Corrections for two years consecutive to the first count so making a total of nine years beginning today. There will be jail credit applied to the previous case, but not to this one.' " *Id.* at 691, 519 A.2d 769.

On appeal, Nash claimed, *inter alia,* that the court "erred at sentencing in allowing the appellant credit only for time served while awaiting trial on the severed charge." *Id.* at 684, 519 A.2d 769. He argued that his second sentence of nine years should "be treated as concurrent with his first sentence of nine years." *Id.* at 691, 519 A.2d 769. The Court determined: "The failure to specify whether a sentence imposed is to be served concurrently or consecutively requires that the sentences be treated as concurrent." *Id.* at 692, 519 A.2d 769. Then, looking to Article 27, § 638C(a) and *Fleeger,* 301 Md. at 160, 482 A.2d 490, the Court concluded that Nash's situation fell "within the scope of the first sentence of subsection (a)." *Nash,* 69 Md.App. at 693, 519 A.2d 769.[20] The Court reasoned that "appellant was in custody before trial and was then convicted on the charge for which he was being held." *Id.* Therefore, it held "that when imposing sentence, the court must give credit for all time spent in custody as a result of the charge for which the sentence is imposed rather than allow such credit to apply only to the sentence of a severed count in the indictment." *Id.* Accordingly, it vacated the sentences and remanded.

---

**20.** Section 638C(a) said, in part: "Any person who is convicted and sentenced shall receive credit ... for all time spent in ... custody ... as a result of the charge for which sentence is imposed...."

Other jurisdictions support the view that credit for presentence confinement should be granted for all concurrent sentences arising from the same matter. *See, e.g., Johnson v. State,* 120 Nev. 296, 89 P.3d 669, 671 (2004) (stating that the "overwhelming majority of states," when apportioning credit for time served in presentence confinement arising from one matter, adhere to the principle that credit is given once, but when concurrent sentences are imposed, credit is effectively applied against each concurrent sentence, because the longest term of a concurrent sentence determines the time in jail); *Schubert v. People,* 698 P.2d 788, 795 (Colo.1985) ("In the case of concurrent sentences, the period of presentence confinement should be credited against each sentence. This is so because concurrent sentences obviously commence at the same time and in functional effect result in one term of imprisonment represented by the longest of the concurrent sentences imposed."); *Hardenbrook v. State,* 953 So.2d 717, 717–18 (Fla.App.2007) (pretrial credits are applied multiple times only when the sentences are concurrent); *State v. Tauiliili,* 96 Hawai'i 195, 29 P.3d 914, 918 (2001) ("... when concurrent sentences are imposed, presentence credit is applied once. The credit applied once, in effect, is applied against each concurrent sentence. This is done because the longest term of the concurrent sentences determines the total length of the imprisonment. However, when consecutive sentences are imposed, credit for presentence imprisonment is properly granted against only the aggregate of the consecutive sentence terms."); *People v. Latona,* 184 Ill.2d 260, 234 Ill.Dec. 801, 703 N.E.2d 901, 907 (1998) (defendants receiving consecutive sentences "should receive but one credit for each day actually spent in custody as a result of the offense or offenses for which they are ultimately sentenced.... [A] defendant sentenced to concurrent sentences receives credit for time served against *each* sentence, because the sentences are served concurrently...."); *Commonwealth v. Carter,* 10 Mass.App.Ct. 618, 411 N.E.2d 184, 186 (1980) ("Any sentence being served concurrently with a sentence to which a jail credit is applied should receive the benefit of the same credit so that the

sentence in fact retains a concurrent status"); *State v. Price,* 310 Mont. 320, 50 P.3d 530, 534 (2002) ("Courts in other jurisdictions having similar statutes agree that a defendant who receives consecutive sentences is entitled to presentence credit only once against the aggregate of the consecutive terms, while a defendant sentenced to concurrent terms in effect receives credit against each sentence.") (citations omitted); *State v. Banes,* 268 Neb. 805, 688 N.W.2d 594, 599–600 (2004) ("Credit is to be given to only one sentence in one case, although we recognize that when an offender has received concurrent sentences, the 'effect' is that credit is applied against each sentence."); *State v. Tuescher,* 226 Wis.2d 465, 595 N.W.2d 443, 445 (Wis.Ct.App.), *review denied,* 228 Wis.2d 175, 602 N.W.2d 761 (1999); *see also* Wade R. Habeeb, *Right to Credit for Time Spent in Custody Prior to Trial or Sentence,* 77 A.L.R.3d 182 (1977); *but see People v. Scott,* 176 Colo. 86, 489 P.2d 198, 199 (1971) ("Since the defendant was convicted of three separate offenses and was given concurrent sentences, when consecutive sentences could have been imposed, our holding in *People v. Jones,* [176 Colo. 61, 489 P.2d 596 (1971) ], and *People v. Regan,* [176 Colo. 59, 489 P.2d 194 (1971) ], does not require that credit be afforded for the time spent by the defendant in jail before sentencing.").

As we have said, in this case, at the initial sentencing on July 26, 2007, the court imposed concurrent terms of confinement. Therefore, until the retaliation sentence was vacated, appellant was serving time on that sentence. Moreover, the court initially dated both sentences from appellant's arrest on February 17, 2006. Because the court imposed concurrent sentences, and dated both from appellant's arrest, the pretrial credit necessarily applied to *both* the assault and retaliation sentences. To be sure, one of appellant's concurrent sentences was subsequently vacated and, on remand, it was changed, in effect, to a consecutive sentence. But, as we construe the statutes, the court could not retroactively take away the time that appellant had already served before the retaliation sentence was vacated.

With respect to the retaliation sentence, appellant served 1,230 days prior to July 2, 2009, and is entitled to a credit for that time against the five-year consecutive sentence imposed on remand. Those days are not "dead time," because the time was credited towards appellant's assault charge, separate and apart from whether it should also be allocated to the retaliation sentence. Neither is it "banked" time, because it is not a "reserve of time." In imposing the sentence for retaliation, the court originally sentenced appellant to a concurrent term and expressly credited his pretrial detention to both the assault and retaliation sentences. And, on resentencing, appellant was not sentenced for a new offense. Rather, it was the same offense. Section 6–218(c) emphasizes crediting a defendant for "all time spent in custody under the prior sentence." In the instant case, because the retaliation sentence was "set aside," the second sentence is not governed solely by C.P. § 6–218(b).

Alternatively, C.P. § 6–218 is ambiguous in the context of this case, because there is more than one reasonable interpretation. *Stoddard, supra,* 395 Md. at 662, 911 A.2d 1245. Parts of both C.P. § 6–218(c) and (d) seem to apply here, while other portions of each seem inapplicable. For example, it would seem that (c) applies because we have a resentencing. *Wilson v. Simms,* 157 Md.App. at 95, 849 A.2d 88, suggests that C.P. § 6–218(c) applies when the same transaction is involved. Here, appellant was "resentenced for the same crime ... based on the same transaction." C.P. § 6–218(c). However, the subsection also seems to envision a scenario where there is only one "prior sentence." Conversely, C.P. § 6–218(d) applies when a defendant is serving multiple sentences for multiple offenses, whether imposed by one court or several courts, and only one is set aside. Arguably, (d) applies because only one of multiple sentences was set aside here. Interpreting C.P. § 6–218(c) to apply in this circumstance, where the Court remanded for resentencing, avoids violation of a basic principle of statutory construction: we endeavor to avoid a construction that renders a clause meaningless or surplusage.

We recognize that C.P. § 6–218 is more specific in detail than C.J. § 12–702(a). The provisions of C.J. § 12–702 generally address credit for time served on remand, while C.P. § 6–218(c) and (d) refer, respectively, to the more specific situations of when credit should be awarded with regard to a "reprosecut[ion] or resentenc[ing] . . . based on the same transaction" or when a defendant is "serving multiple sentences, one of which is set aside." Under principles of statutory construction, a more specific statute controls if there is a conflict. *See Dixon, supra,* 175 Md.App. at 421, 927 A.2d 445. But, we first attempt to harmonize the statutes, when possible.

When we reconcile C.P. § 6–218 with C.J. § 12–702(a), it suggests to us that the General Assembly intended for a defendant to receive credit for the time served on a previous sentence that is later vacated. Here, the defendant was initially awarded credit from the date of his arrest, and his sentence for retaliation was initially concurrent. It follows that appellant was entitled to credit from February 17, 2006, through July 1, 2009.

Our analysis is also consistent with the rule of lenity, which applies in the event of ambiguity. *Nelson, supra,* 187 Md. App. at 13, 975 A.2d 298. Under this principle, any ambiguity in the statutes is construed against the State. *Haskins, supra,* 171 Md.App. at 193–94, 908 A.2d 750. In that event, C.P. § 6–218(c) would govern.

As we have indicated, the judge initially imposed an enhanced sentence—the maximum sentence for witness retaliation that she believed was permitted by law (i.e., twenty years). On remand, that sentence was reduced to the applicable maximum of five years, with a start date of July 2, 2009. Although we discern no error in the court's imposition of a consecutive sentence of five years for retaliation, under C.L. § 9–303(c)(1), we shall vacate the sentence and remand to the circuit court to award credit for the period that appellant served between February 17, 2006, and July 1, 2009.

**SENTENCE FOR RETALIATION VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR FURTHER**

PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE CITY.